## LUCIUS F. GOODRICH v. DORSET MARBLE COMPANY.

*Water Course and Water Rights. Measure of Damages for Flooding Another's Land. Evidence. Question for Jury.*

1. In an action against a marble company for depositing sand in a stream whereby a sand-bar was formed and the plaintiff's land was flooded, he is entitled to recover for all injuries to his crops and land, which were occasioned by the defendant's unlawful acts committed before the commencement of the suit, including the effects of such acts, which became apparent subsequent to the commencement.

2. Evidence is admissible to prove the full effect of the unlawful flooding of lands, although it tends to show some injury caused by acts committed after the commencement of the suit.

3. It was for the jury to decide as a question of fact, whether the sand-bar formed by the defendant's deposition of sand in the stream obstructed the water.

TRESPASS on the case for flooding the plaintiff's land. Trial by jury, September Term, 1887, ROWELL, J.; presiding. Verdict and judgment for plaintiff.

The writ was dated and served February 6, 1886. The plaintiff made no claim prior to the season of 1885. It appeared from

his own testimony, that his meadow is situated upon Castleton River about a quarter of a mile above the defendant's marble mill; that said river at this place was a sluggish stream, the meadow being nearly level; that below defendant's mill and near the stream, are situated the marble mills of several other companies; and that all, including defendant, have for several years run off sand mixed with water from the saws of their mills into the stream.

The defendant denied that the "sand-bar" complained of, was the cause of flowing his land, and also claimed that plaintiff could recover, if at all, only for the damage to his hay crop in 1885; while plaintiff claimed to recover for damages to his land as well.

The court ruled that plaintiff could recover, if at all, for all the damages he sustained by reason of the unlawful acts of the defendant done before suit brought, whether it consisted in reduction of the hay crop in 1885, or injury to the land itself, or both; that the fact that similar acts were continued by the defendant after suit brought might render it more difficult to ascertain the damage resulting from acts done before suit, but would not disentitle plaintiff to recover such damage as he could show resulted from such prior acts; and confined plaintiff to recovery for damages resulting from such acts alone.

Under this ruling, as tending to show what damage to the land resulted from overflow before suit brought, the following testimony of the plaintiff was admitted subject to the defendant's exception.

Q. Taking the stream as you found it during the season and latter part of the season of 1885, and compare it with the stream in 1886, and the effect upon your meadow, or rather the stream and flow of water in it, and the set back of the water, whether it increased, whether there was more in the year 1886 than in 1885? A. More in 1886.

Q. How about the deposit of sand as you examined it and found it in 1886, as compared with 1885? A. I think there is more, because they have kept running it in.

Goodrich *v.* Marble Co.

Q. You said you examined it yourself. As you examined the bed of the stream and looked at it in that way in 1885 and 1886, how did they compare?

A. I think it has been all the while on the gain; the water has raised, and the stream filled up, and caused more stuff to lodge about where the sand comes in, perhaps.

\*          \*          \*          \*          \*          \*

Q. You may state the condition the meadow was in in the summer of 1886, as affected one way or the other by this water.

A. It has killed out the fine grass, the good quality; there is a place where the water has laid on there so long that it has killed it out entirely, and nothing but polly pods come in. Where the grass stands it is coarse, not fit for anything.

The plaintiff introduced testimony to show that opposite where the defendant discharged its sand into the stream there was a sand-bar or " sand dam," which he claimed obstructed the flow of the stream and was the cause of the flooding of his land. The defendant introduced testimony tending to show, and claimed an obstruction at a point on the stream below all the marble mills, together with the filling up of the channel in the intervening distance, was the cause of setting back the water, and that the current of the stream was the same, above, across and below the sand-bar.

*W. H. Smith*, for the defendant.

All experience has shown, as is well known, that *one year's* flowing of mowing lands works no essential injury. Indeed, for most lands, such flowing is a benefit.

If granted that the ruling as to damages recoverable, and the charge to the jury was correct, it is manifest that the admission of the evidence, to which objection and exception were taken by the defendant, led the jury astray and allowed them to find damages far in excess of what was possible to have been suffered by the plaintiff for the overflowing in the year 1885.

Such damages could be found only by consideration of a

continued flowing in 1886 and 1887, the trial being at September Term, 1887.

The whole force of the testimony taken by interrogatories and reported here, admitted under objection and exception by defendant, is as to the effect of the flowing since the suit was brought.

*Lawrence & Meldon*, for the plaintiff.

The objection to the evidence was because it tended to show injury to land and crops accruing subsequent to the suit.

The effect upon the crops and land caused by the overflow prior to the suit, was proper to be shown.

Can the defendant object to this because by continuing its wrongful acts which caused the injury, it is thereby rendered more difficult for the plaintiff to draw the line between damage accruing from the wrongful act of defendant committed before and after suit?

Had defendant at the commencement of suit discontinued running its sand into the stream and removed the obstruction it had already caused, clearly, the plaintiff would have been entitled to show the subsequent condition of his meadow as affected by the overflow.

And as bearing upon this, the quality and quantity of hay growing thereon as compared with that produced before the flooding of the meadow was admissible.

The opinion of the court was delivered by

TYLER, J. If the plaintiff was entitled to recover in this action he was entitled to recover for all the injuries to his crops and land that were occasioned by the defendant's unlawful acts committed before the commencement of the suit.

The plaintiff's evidence, as recited in the bill of exceptions, and which was admitted subject to the defendant's objection and exception, clearly, bore upon the question of these injuries and could not be properly excluded although it had a tendency to show some injury caused by similar acts done after the

suit was commenced and for which the plaintiff could not recover in this action.

The plaintiff was not restricted in his right of recovery to the injury to his land in the year 1885. All the effects of the flowage might not have been apparent until the following year, and the evidence in question was admissible as tending to show the full extent of the injury caused by the alleged wrongful act; and in this view it was proper to show by comparison the condition of the meadow in the year 1886 and its condition in the preceding year. It was doubtless a somewhat difficult task for the jury to determine how much of that condition was attributable to the wrongful acts of defendant committed before the bringing of the suit and how much to such acts committed thereafter; but it was the province and the duty of the jury to determine this question and the instructions of the court on this subject seem to have been full and explicit. Certainly, the fact that the defendant continued the wrongful act after the suit was brought, should not operate as a shield to protect it from the full consequences of such act committed previously thereto.

The defendant's counsel requested the court to instruct the jury that, "If the jury find that the sand deposited by the defendant in said river or stream does not interrupt the flow of the water in said stream, and that there is as much current in the stream above the dam as there is below it, then the plaintiff cannot recover damages of the defendant in this action; that the comparative depth of water above and below said dam was not material to the issue in this case." The court refused so to charge, but left it to the jury to decide as a question of fact, upon all the evidence before them, whether or not the bar obstructed the water as complained of. In this there was no error; as it was clearly a question of fact for the jury.

We find no legal error in the trial of the cause in the court below and its judgment is therefore affirmed.